IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–02759–KMT

GINGER MAY RUCKER,

      Plaintiff,

v.

CAROLYN W. COLVIN, Commissioner of Social Security,

      Defendant.

---

## ORDER

---

      The matter before the court is Claimant Ginger May Rucker's appeal of the Commissioner of Social Security's final decision denying her applications for Disability Insurance Benefits ("DIB"), Supplemental Security Income ("SSI"), and Widow's or Widower's Insurance Benefits ("WIB") pursuant to Titles II and XVI of the Social Security Act ("the Act"). (Doc. No. 1, filed October 9, 2014.)  Jurisdiction is proper under 42 U.S.C. § 405(g).

### FACTUAL AND PROCEDURAL BACKGROUND

      Claimant applied for DIB in July 2012 and SSI and WIB in August 2013, alleging that she had been disabled since February 1, 2009 by restless leg syndrome, tendonitis in the back, arthritis "in lumbar," pinched sciatica, and depression.  (*See* Doc. No. 13, Social Security Administrative Record [AR] at 193, 209, 219, 231.)  After holding a hearing on her claims, an Administrative Law Judge ("ALJ") issued a written ruling in February 2014 finding Claimant not disabled within the meaning of the Act.  (*Id.* at 14–27, 33–62.)  Though the ALJ found

several of Claimant's impairments severe enough to significantly affect her work, the ALJ found

that none of those impairments met or equaled the severity required to presumptively qualify

Claimant as disabled under the Commissioner's regulations.  (*Id.* at 18–20.)  Ultimately, the ALJ

concluded that the Claimant was not disabled because, despite her impairments, she still had the

functional capacity to work as a cashier, the type of job she had held in the past.  (*Id.* at 26–27.)

The Commissioner's Appeals Council subsequently denied Claimant's request for review (*id.* at

1), making the ALJ's decision the final decision of the Commissioner for purposes of judicial

review.  *See* 20 C.F.R. §§ 404.981, 422.210(a).  Claimant timely sought review by the court.

## STATUTORY AND REGULATORY BACKGROUND

The Commissioner has established a five step, sequential process for determining

whether a claimant is disabled under Titles II and XVI of the Act:

1.  The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity.  A claimant who works is not disabled, regardless of the medical findings.

2.  The ALJ must then determine whether the claimed impairment is "severe."  A "severe" impairment significantly limits the claimant's physical or mental ability to do basic work activities.

3.  The ALJ must then determine if the impairment meets or "equals" in severity certain impairments described in Appendix 1 of the regulations.

4.  If the claimant's impairment does not meet or equal a listed impairment, then the ALJ must determine whether the claimant can still perform any past work despite his or her limitations.

5.  If the claimant no longer retains the ability to perform past work, then the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy despite the claimant's limitations.

*See Williams v. Bowen,* 844 F.2d 748, 750–52 (10th Cir. 1988); 20 C.F.R. § 404.1520(a)(4)(i)–

(v).  The claimant has the initial burden of establishing a disability in the first four steps of this

analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). After that, the burden shifts to the Commissioner to prove that, despite the claimant's impairments, he or she is still capable of performing substantial gainful work in the national economy. *Id.* If at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

## STANDARD OF REVIEW

Review of the Commissioner's disability decision by the Court is limited to determining whether the ALJ applied the correct legal standard, whether the decision is supported by substantial evidence, and whether the decision comports with the relevant regulations and case law. *Hamilton v. Sec'y of Health and Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990); *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). An ALJ's failure to apply the correct legal standard constitutes an independent and sufficient basis for the Court to reverse the ALJ's decision. *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Likewise, an ALJ's failure to supply the Court with a sufficient basis to determine that the ALJ followed appropriate legal principles is also grounds for reversal. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) (quoting *Smith v. Heckler*, 707 F.2d 1284 (11th Cir. 1983)).

Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. A finding is supported by substantial evidence if it is supported by "more than a scintilla, but less than a preponderance" of evidence. *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988) (quoting *Campbell v. Bowen*, 822 F.2d 1518, 1521

(10th Cir. 1987)). Evidence is insubstantial when it is "overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The Court may not "reweigh the evidence" or "substitute its judgment" for that of the Commissioner." *Jozefowicz v. Heckler*, 811 F.2d 1352, 1357 (10th Cir. 1987). So long as there is substantial evidence to support the ALJ's decision, the decision must stand, even if the Court would have reached a different result. *See Ellison*, 929 F.2d at 536.

## ANALYSIS

Claimant alleges the ALJ erred in two major ways. First, Claimant argues that substantial evidence does not support the ALJ's step-four residual functional capacity ("RFC") determination that Claimant is capable of performing "light work."[1] (Doc. No. 16 [Opening Br.] at 14, filed Feb. 10, 2015.) Second, Claimant argues that substantial evidence does not support the ALJ's finding that Claimant can still perform her past work as a cashier. (*Id.* at 4.)

### 1. The ALJ's Finding That Claimant Is Capable of Performing Light Work

Before completing step four of the disability review process, the ALJ must assess the claimant's RFC, which is the most the claimant can do in a work setting on a regular and continuing basis despite the limitations imposed by his or her impairments. SSR 96-8p, 1996 WL 374184 at *1, 3. When determining the claimant's RFC, the ALJ must consider all the relevant evidence and all of the claimant's medically determinable impairments. *Id.* at *2. Then, in the ALJ's written decision, the ALJ must explain how the evidence supports each of his or her conclusions. *Id.* at *7. As part of that explanation, the ALJ must "cit[e] specific medical facts . .

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567.

4

. and nonmedical evidence" and "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.*

In her written decision, the ALJ concluded that Claimant had the capacity to perform "light work . . . with the following limitations: unskilled simple repetitive work, no work above waist height, no climbing or balancing, all other postural activities on an occasional basis, frequent handwork, and . . . limited to little exposure . . . to . . . pollutants." (AR at 20.)  The ALJ arrived at this conclusion after summarizing Claimant's testimony, evaluating Claimant's medical records, discounting her testimony, and assigning "little weight" to the opinions of Claimant's chiropractor, Dr. Bruce Lee, and Claimant's occupational therapist, Ms. Kristine Couch.  (*Id.* at 20–26.)

Claimant contends that the ALJ's finding that Claimant is capable of performing light work is flawed because it is based on the ALJ's failure to (a) properly credit Claimant's testimony and (b) appropriately weigh the opinions of Dr. Lee and Ms. Couch.  (Opening Br. at 14–24.)

### a.  The Credibility of Claimant's Testimony

Credibility determinations are the province of the ALJ, and the Court will not upset those determinations when they are supported by substantial evidence.  *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990).  Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion.  *Brown*, 912 F.2d at 1196.  Rather than bald conclusions in the guise of findings, the ALJ must cite specific reasons for doubting the claimant's credibility, especially when subjective pain testimony is crucial.  *See Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  A claimant's statements about the intensity

and persistence of subjective symptoms like pain may not be disregarded solely because they are
not substantiated by objective medical evidence.  *Id.* at *2.  When evaluating the credibility of a
claimant's symptom testimony, the ALJ must consider a multitude of factors, including the
extensiveness of the claimant's attempts to obtain relief, the frequency of the claimant's medical
contacts, the nature of the claimant's daily activities, subjective measures of credibility within
the ALJ's judgment, and the consistency or compatibility of the claimant's testimony with
objective medical evidence.  *Branum v. Barnhart*, 385 F.3d 1268, 1273–74 (10th Cir. 2004).
The ALJ need not, however, make a "formalistic factor-by-factor recitation of the evidence."
*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012) (citation omitted).  Ultimately,
"common sense, not technical perfection," is the Court's guide.  *Id.*

Here, the ALJ's conclusion that Claimant is capable of performing some light work is
based, in part, on the ALJ finding Claimant's testimony about the intensity, persistence, and
limiting effects of her symptoms "not entirely credible."  (AR at 22.)  The ALJ explained:

> In finding the claimant's testimony unpersuasive, the record reveals the claimant
> has not generally received the type of medical treatment one would expect for a
> totally disabled individual, with relatively infrequent trips to the doctor for the
> allegedly disabling symptoms and significant gaps in the history of treatment, for
> treatment that has been essentially routine and/or conservative in nature.

(*Id.*)  The ALJ noted that the record contains no medical evidence prior to April 2010.  (*Id.*)  As
the ALJ recited the medical evidence of later years, noting  Claimant's symptoms, treatment, and
statements to doctors, the ALJ pointed out when Claimant had failed to seek treatment, had
refused treatment, or had failed to mention an allegedly disabling symptom to her doctor.  (*See
id.* at 22–25.)  The ALJ opined:

> Overall, treatment notes from her medical providers show the claimant did not
> complain of or seek treatment for any back pain or shoulder pain.  Instead, these

6

> treatment notes show that the claimant told her medical sources that she was doing well.  In addition, one would typically expect an individual alleging debilitating back and shoulder pain to discuss these issues with [her] new treatment provider.  However, the claimant did not report any significant problems to Thornton Medical Center.  Her medical summary listed asthma, thyroidism, right shoulder injury, nicotine addiction, and anxiety, but not any back condition.

(*Id.* at 23.)  The ALJ also focused on Claimant's "refusal to follow her medical sources' recommendation[s]."  (*Id.*)  The ALJ:

> . . . inferred from [Claimant's] noncompliance [with treatment] that perhaps the claimant's symptoms improved enough to be at a bearable level and was therefore not truly severe as she reported it to be, or that her symptoms has [sic] not become severe enough to motivate her to make the necessary lifestyle changes that would reduce her symptoms and promote better health.  Whichever of these factors his [sic] given rise to her noncompliance, the fact that she has consistently refused to follow her medical sources' directions definitely detracts from her credibility.

(*Id.*)  Finally, the ALJ noted Claimant's "inconsistent statement[s] concerning her functional limitations," Claimant's "less than maximal effort" during a functional examination, Claimant's "work activity after the alleged onset date," her "inconsistent" reasons for stopping work, and the extent of Claimant's daily activities, which the ALJ stated, "reveal[s] the claimant is capable of more than she alleged."  (*Id.* at 24–25.)

Claimant argues that the ALJ's use of Claimant's lack of medical treatment to discount Claimant's testimony was improper.  (Opening Br. at 21–23.)  Claimant also contends that the ALJ erred by failing to consider Claimant's "exemplary work history" as part of the ALJ's credibility assessment of Claimant.  (*Id.* at 23–24.)

The court finds that the ALJ considered all the necessary factors and adequately justified her reasons for discounting Claimant's testimony.  Instead of relying exclusively on Claimant's lack of medical treatment to discount Claimant's testimony, as Claimant's argument suggests,

the ALJ properly considered and relied on the multitude of factors the ALJ is required to

consider when assessing Claimant's credibility.  The ALJ focused not only on Claimant's lack of

treatment, but also on the extensiveness of Claimant's attempts to obtain relief and the frequency

of Claimant's medical contacts, finding Claimant's failure to seek treatment and refusal to

comply with treatment particularly telling of Claimant's credibility.  (*See* AR at 23.)  The ALJ

also noted that the nature of Claimant's daily activities indicate the Claimant is capable of more

than she states.  (*See id.* at 25.)  By noting Claimant's "submaximal effort" during one of her

functional examinations, the ALJ considered subjective measures of credibility within the ALJ's

judgment.  (*See id.* at 24.)  And by noting that the record contains no medical evidence prior to

April 2010, more than a year after the alleged onset of disability, the ALJ showed that she

considered the consistency or compatibility of Claimant's testimony with objective medical

evidence.  (*See id.* at 22.)  Although the ALJ did not characterize Claimant's work history as

"exemplary," as the Claimant does, the ALJ extensively discussed Claimant's past relevant

work, leaving no doubt that she considered Claimant's work history.  *See infra* Section 2.

    For these reasons, the court affirms the ALJ's discounting of Claimant's credibility.

### b.  The Weight of Claimant's Medical Source Opinions

    The ALJ is entrusted with the difficult task of resolving evidentiary conflicts, weighing

medical source opinions, and, ultimately, determining whether claimants are disabled within the

meaning of the Act.  *See Richardson v. Perales*, 402 U.S. 389, 399 (1971).  The ALJ is required

to consider every medical opinion the ALJ receives, whether those opinions are from "acceptable

medical sources" or from "other sources."  20 C.F.R. § 416.927(c); SSR 06-03P, 2006 WL

2329939 at *3.  Acceptable medical sources include licensed physicians and psychologists,

8

among others.  20 C.F.R. § 404.15139(a); SSR 06-03P, 2006 WL 2329939 at *2.  Neither

chiropractors nor occupational therapists are acceptable medical sources.  20 C.F.R.

§ 404.15139(a); SSR 06-03P, 2006 WL 2329939 at *2.  When evaluating non-controlling

medical opinions, whether from acceptable sources or not, the ALJ considers six factors:

> (1)  the length of the treatment relationship and the frequency of examination;
>
> (2)  the nature and extent of the treatment relationship, including the treatment
>       provided and the kind of examination or testing performed;
>
> (3)  the degree to which the physician's opinion is supported by relevant evidence;
>
> (4)  consistency between the opinion and the record as a whole;
>
> (5)  whether or not the physician is a specialist in the area upon which an opinion
>       is rendered; and
>
> (6)  other factors brought to the ALJ's attention that tend to support or contradict
>       the opinion.

20 C.F.R. §§ 404.1527(c), 416.927; SSR 06-03P, 2006 WL 2329939 at *3.  In the ALJ's written

decision, the ALJ must clearly state how much weight the ALJ ultimately assigned the opinion

and why.  *See Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003).  When explaining

the weight given to "other source" opinions that may have an effect on the outcome of the

disability decision, the ALJ's discussion must, at a minimum, "allow a claimant or subsequent

reviewer to follow the adjudicator's reasoning."  SSR 06-03P, 2006 WL 2329939 at *6.  *See also*

*Mounts v. Astrue*, 479 F. App'x 860, 866 (10th Cir. 2012).  The ALJ must consider the six

factors, but need not discuss each of them.  *Id.* (quoting 20 C.F.R. § 404.1527(d)(2)); *Oldham v.*

*Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Here, the ALJ gave "little weight" to the opinions of Dr. Lee and Ms. Couch.  (AR at 26.)

The ALJ first summarized the two source's opinions.  (*Id.* at 25–26.)  She then noted that neither

source was an "acceptable medical source[] . . . ." (*Id.* at 26.)  As to Dr. Lee's opinion, the ALJ

stated:

> Although Dr. Lee did treat the claimant, the degree of limitation he gave the
> claimant is not supported by the objective medical evidence in the file.  In
> addition, Dr. Lee only treated the claimant on two occasions, in September 2011
> and June 2012 . . . .  Dr. Lee's June 2012 opinion is inconsistent with the
> treatment notes from June 2012 that show the claimant reported that she "woke up
> this way" when describing her low back pain . . . .  Moreover, he has not treated
> the claimant since then.

(*Id.*)  As to Ms. Couch's opinion, the ALJ stated that Ms. Couch performed only a one-time

evaluation of Claimant's functional abilities and that Claimant "indicated that she was able to

perform greater activities than assessed by Ms. Couch." (*Id.*)  The ALJ added, "Likewise, the

claimant did [sic] tell her medical providers about any back pain, hand pain, leg pain, or other

symptoms she reported to Ms. Couch." (*Id.*)

Claimant argues that the ALJ improperly disregarded the opinions of Dr. Lee and Ms.

Couch, contending the ALJ did not discuss the factors the ALJ must consider when evaluating

medical opinions, did not connect those factors with any evidence, and did not explain the

weight she assigned each factor.  (Opening Br. at 14–20.)

The court finds no error with the ALJ's weighing of Dr. Lee and Ms. Couch's opinions.

The ALJ assigned "little weight" to the opinions and justified that decision using the relevant

factors.  (*See* AR at 26.)  The ALJ demonstrated her consideration of the first two factors (the

length, nature, and extent of the treatment relationship) when she noted that Ms. Couch

performed only one evaluation and that Dr. Lee treated Claimant on only two occasions and had

not treated her since.  (*See id.*)  The ALJ demonstrated her consideration of the third, fourth, and

sixth factors (the degree to which the physician's opinion is supported by relevant evidence, the

consistency between the opinion and the record as a whole, and other factors brought to the

ALJ's attention that tend to support or contradict the opinion) by stating that Dr. Lee's opinion

was inconsistent with the objective evidence in the file, that Dr. Lee's opinion was inconsistent

with the treatment notes indicating that Claimant "woke up this way" when describing her lower

back pain, and that Claimant did not tell other providers of the kind of pain she reported to Ms.

Couch. (*See id.*)  The ALJ's explanation of the weight she assigned these opinions, at a

minimum, allowed this court to follow the adjudicator's reasoning.  That is all the law requires

when explaining the weight given to "other sources" like a chiropractor or an occupational

therapist.  SSR 06-03P, 2006 WL 2329939 at *6.  *See also Mounts*, 479 F. App'x at 866.

For these reasons, the court affirms the ALJ's assignment of "little weight" to Dr. Lee

and Ms. Couch's opinions.

## 2.   The ALJ's Finding That Claimant Can Perform Past Relevant Work

At step four of the disability review process, the claimant must prove that he or she a)

cannot perform a past job as he or she actually performed it, and b) cannot perform a past job as

it is generally performed in the national economy.  *See Andrade v. Sec'y of Health & Human*

*Servs.*, 985 F.2d 1045, 1050 (10th Cir. 1993) (analyzing SSR 82–61, 1982 WL 31387.)  When

evaluating whether the claimant has met both of these burdens, the ALJ must 1) evaluate a

claimant's RFC, 2) determine the physical and mental demands of the claimant's past relevant

work as actually performed and as generally performed in the national economy, and 3) compare

the claimant's RFC to the demands of his or her past work to see if the claimant can still perform

that work.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  The ALJ must make specific

findings at each "phase."  *Id.*

The ALJ must "investigate and elicit a reasonable explanation for any conflict between the [Dictionary of Occupational Titles] and expert testimony before the ALJ may rely on the expert's testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). *See also* SSR 00–4p, 2000 WL 1898704, at *4. This duty exists at both the fourth and fifth steps of the disability review process. *See Krueger v. Astrue*, 337 F. App'x 758, 761 (10th Cir. 2009) (applying *Haddock* at step four). An ALJ's failure to inquire is harmless, however, when the there is no conflict between the Dictionary of Occupational Titles and vocational expert's testimony. *Hackett v. Barnhart*, 395 F.3d 1168, 1175 (10th Cir. 2005).

If, at step four, the ALJ determines that a claimant is not capable of performing past relevant work, then, at step five, the ALJ considers whether the claimant can perform "other work" in the national economy in light of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). Claimants aged fifty to fifty-four are considered "closely approaching advanced age," and will have their age, severe impairments, and work experience considered as possibly affecting their ability to adjust to other work. 20 C.F.R. § 404.1563. Persons aged fifty-five and older are persons of "advanced age," and are presumed to have more difficulty adjusting to other work. *Id.* The Commissioner does not "apply the age categories mechanically in a borderline situation." *Id.* When a claimant is but a few days or months away from reaching an older age category, and "using the older age category would result in a determination or decision that you are disabled," then the Commissioner will "consider whether to use the older age category" in light of the claimant's particular circumstances. *Id.* The Commissioner has prepared tables, called "grids," that serve as "shortcuts" and "presumptions"

to help ALJ's evaluate whether sufficient jobs exist in the national economy for someone matching the claimant's age, education, and work experience. *Trimiar v. Sullivan*, 966 F.2d 1326, 1332 (10th Cir. 1992). A claimant of advanced age with limited high school education and semi-skilled work experience restricted to light work is presumptively disabled under the grids if the ALJ determines that the claimant's job skills are not transferrable. 20 C.F.R. § Pt. 404, Subpt. P, App. 2 Table 2.

Here, at the administrative hearing, when the ALJ asked the vocational expert to "go over the work [Claimant has] done in the past in terms of skill, exertional level and DOT code," the expert first asked Claimant a follow-up question: "At the Smoker Friendly you had indicated that for the first year you did stocking and cleaning, so after the first year when you were also doing stocking and cleaning in addition to the cashier work, were you just a cashier?" (AR at 57.) Claimant answered, "Yes." (*Id.*) The expert then associated Claimant's past job as a cashier for Goodwill with "cashier II . . . DOT number . . . 211.462-010, skill level of 2, light" and "general merchandise salesperson . . . DOT number . . . 279.357-054, skill level of 3, light." (*Id.* at 59.) Next, the expert associated Claimant's past job as a cashier at Smoker Friendly with the cashier II job and "self-service store stock clerk . . . DOT number . . . 299.367-014, skill level of 4, heavy." (*Id.*) When the ALJ asked the vocational expert whether someone with Claimant's RFC could perform any of those past relevant jobs, the expert responded affirmatively, stating that "based on those restrictions, the cashier II position from the past work would meet that requirement." (*Id.*)

In her written decision, the ALJ recounted the vocational expert's testimony that Claimant's past relevant jobs included "Cashier II (DOT #211.462-010, SVP 2, light exertion);

general merchandise salesperson (DOT #279.357-054, SVP 3, light exertion); and Cashier II/Self service stock clerk (DOT #299.367-014, SVP 4, heavy exertion.)" (*Id.* at 26–27.) After comparing the requirements of the Cashier II job with Claimant's RFC, the ALJ concluded that Claimant was capable of performing the Cashier II job as that job is generally performed in the national economy. (*Id.* at 27.) According to the ALJ, "the job is a light unskilled job, and, based on the testimony of the vocational expert, the claimant's past relevant work as a Cashier II does not require the performance of work-related activities precluded by the claimant's residual functional capacity." (*Id.*)

Claimant argues that the Cashier II job is markedly different from the cashier job Claimant worked and, therefore, should not have been used by the ALJ as the basis of her conclusion that Claimant is capable of performing past relevant work. (Opening Br. at 5–8.) Claimant states that, although there are similarities between the requirements of the Cashier II job and the requirements of her Goodwill cashier job, her Goodwill cashier job demanded things the generic Cashier II job type does not, including the "stock[ing] of shelves," "climbing several times per day," and "frequent kneeling and crouching." (*Id.* at 7, 9.) Claimant contends that the ALJ erred by not asking the vocational expert about these differences and by failing to elicit a reasonable explanation for the conflict between job description and the vocational expert's testimony associating the Cashier II job with Claimant's past work as a Goodwill cashier. (*Id.* at 8.) Citing the Commissioner's guidance, Claimant argues that Claimant may not have qualifying "work as-generally-performed" when, as here, Claimant's past relevant work "is an amalgam of

two or more separate occupations." (*Id.* at 7.)  Finally,[2] Claimant argues that because the ALJ's

decision came just two days before Claimant's fifty-fifth birthday, the ALJ should have analyzed

Claimant's ability to perform the Cashier II job as a person of advanced age, which, Claimant

argues, would have required the ALJ to make additional findings meriting remand.  (*Id.* at 12–

14.)

      The court finds that the ALJ failed to investigate whether there was a conflict between

the vocational expert's testimony and the Dictionary of Occupational Titles, but that the error is

harmless because there is no conflict between the vocational expert's testimony and the job

description in the Dictionary of Occupational Titles.  "Cashier II" comes directly from the

Dictionary of Occupational Titles.  The vocational expert even provided the DOT number.

There cannot be any conflict between the job identified by the expert and the job described in the

Dictionary of Occupational Titles when the two are one and the same.

      To the extent that there is a "conflict" between the actual duties of Claimant's Goodwill

job and the job duties listed for Cashier II, it is not the kind of "conflict" governed by Social

Security Ruling 00-4p or the case law Claimant cites.  *See Krueger*, 337 F. App'x at 761–62

(clarifying that the relevant conflict is between the vocational expert's testimony about a job's

demands and the description of that job's demands in the Dictionary of Occupational Titles);

SSR 00-4P, 2000 WL 1898704 at *2 (addressing conflicts between accepted sources of job

information, such as between the vocational expert's description of a job and the Dictionary of

Occupational Title's description of a job).  Moreover, even if the DOT description of "Cashier

---

[2] Claimant also argues that the ALJ's "as actually performed" finding is not supported by
substantial evidence, but the ALJ never made any "as actually performed" findings.  The ALJ
stopped her analysis after determining that Claiming could perform the job of Cashier II as that
job is generally performed in the national economy.  (*See* AR at 27.)

II" did not match Claimant's actual duties as a cashier at Goodwill, Claimant's job at Goodwill was not the only cashier job the vocational expert associated with Cashier II.  The vocational expert also associated the Cashier II job with Claimant's cashier job at Smoker Friendly.  (AR at 58.)  Claimant does not argue that the Cashier II job description conflicts with the actual duties of her Smoker Friendly job during the last four years of her employment there, and when the vocational expert specifically asked Claimant whether the last four years of her job as a cashier at Smoker Friendly was as a cashier only, the Claimant responded affirmatively.  (*Id.* at 53.)

The court disagrees that this is a case where there is no "work as generally performed."  Though it is true that some "composite" jobs have no counterpart in the Dictionary of Occupational Titles, *see* SSR 82-61, 1982 WL 31387 at *2, the vocational expert had no trouble associating jobs in the Dictionary of Occupational Titles with Claimant's Goodwill and Smoker Friendly jobs.  (*See* AR at 59.)  As SSR-82-61 states, such "situations will be evaluated according to the particular facts of each individual case."  SSR 82-61, 1982 WL 31387 at *2.  That is exactly what the vocational expert and the ALJ did here.

The court also rejects Claimant's argument that the ALJ erred by failing to consider Claimant's borderline age.  The ALJ considers a claimant's age at step five of the disability review process, not step four.  *See* 20 C.F.R. § 404.1520(a)(4) (introducing age as a consideration at step five, not step four).  Because the ALJ's decision in this case found Claimant not disabled at step four, the ALJ was under no obligation to proceed to step five.  *See Casias*, 933 F.2d at 801 (stating that if at any point the Commissioner conclusively finds that the claimant is or is not disabled during the five-step review process, the analysis ends).  Thus, the ALJ's alleged failure to consider Claimant's borderline advanced age is not error.

For these reasons, the court affirms the ALJ's finding that Claimant is not disabled due to her continuing ability to perform past relevant work.

## CONCLUSION

Having considered and rejected each of Claimant's arguments, it is therefore

**ORDERED** that the Commissioner's decision through the Administrative Law Judge is **AFFIRMED**.  It is further

**ORDERED** that the Commissioner, the Defendant, is awarded costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated this 11th day of January, 2016.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge